UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **FRANKLIN COUNTY COMMISSION,** | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 3:19-CV-0230-CLS |
| **CRISTA MADDEN,** *et al.,* | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff, the Franklin County Commission ("the Commission"), asserts claims for breach of contract and fraudulent suppression against defendant Lafayette Insurance Company ("Lafayette"), arising from Lafayette's failure to pay a claim under a policy covering employee theft.[1] The case is before the court on Lafayette's motion to dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.[2] Upon consideration of the complaint, Lafayette's motion, plaintiffs' response,[3] Lafayette's reply,[4] plaintiff's

---

[1] *See* doc. no. 1-1 (Complaint). The complaint was filed in state court but removed here by Lafayette. Doc. no. 1 (Notice of Removal). Plaintiff's complaint asserted other claims against other defendants, but only the claims against Lafayette are addressed in this opinion.

[2] Doc. no. 32.

[3] Doc. no. 39 (Plaintiff's Objection and Response to Defendant Lafayette Insurance Company's Motion to Dismiss).

[4] Doc. no. 53 (Defendant Lafayette Insurance Company's Reply to Plaintiff's Response to its Motion to Dismiss).

sur-reply,[5] and oral arguments of counsel, the court concludes that the motion should be granted.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.
>
> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[5] Doc. no. 54 (Plaintiff's Sur-Reply Brief to Defendant Lafayette Insurance Company's Additional Submissions to Their Motion to Dismiss).

that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alterations supplied).

## II. ALLEGATIONS OF PLAINTIFF'S COMPLAINT AND RELEVANT POLICY LANGUAGE

Lafayette issued policy number 60346212 ("the policy") to the Commission, covering employee theft during the policy period from April 1, 2014, to the same date in calendar year 2015.[6] The policy states that:

> Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, . . . which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition . . . :
>
> **1.     Employee Theft**
>
> We will pay for loss of or damage to "money," "securities" and "other property" resulting directly from "theft" committed by an "employee," whether identified or not, acting alone or in collusion with other persons.
>
> For the purposes of ths Insuring Agreement, "theft" shall also include forgery.

Doc. no. 1-5 (Policy), at ECF 5, § A(1) (boldface emphasis in original, ellipses

---

[6] Doc. no. 1-5 (Policy), at ECF 3.

supplied).⁷ The policy defines the term "occurrence" as meaning:

>    (1) An individual act;
>
>    (2) The combined total of all separate acts whether or not related; or
>
>    (3) A series of acts whether or not related; committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations . . . .

*Id.* at ECF 19, § F(14)(a) (ellipsis supplied). The terms "discover" and "discovered" are defined as meaning

> the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

*Id.* at ECF 17, § F(4). The "Extended Period to Discover Loss Condition" referenced in the first policy provision quoted above is defined as follows:

> We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:
>
> (1) No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer,

---

⁷ A district court may consider a document outside the pleadings without converting a motion to dismiss into one for summary judgment "if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, plaintiff's claim is founded completely upon the language of the policy, and plaintiff has not disputed the authenticity of the policy.

> replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

*Id.* at ECF 10, § E(1)(g)(1).

Over a period of approximately ten years, beginning either in 2007 or 2008 and extending into calendar year 2017, Crista Madden, a Commission employee, stole the aggregate amount of $753,899.21 from the Franklin County Commission's General Fund, Franklin County's Gas Tax Fund, and the Franklin County Commission's Solid Waste Fund.[8] The Franklin County Commission filed a claim under the policy for Madden's theft on March 30, 2018; *i.e.,* two years, eleven months, and thirty days after April 1, 2015, the last date on which Lafayette's policy with the Commission had been in force and effect.[9] The Commission's "Liability Notice of Occurrence/Claim" form stated:

> On 2/07/2018 Insured found where a previous employee had been taking money from their accounts. They had an audit done and since December 2007 Crista Madden had been writing checks to vendors and then changing the name on the check to her name after the checks were signed. A total [of] around $753,000. Crista Madden has been arrested and is out on bail at this time and has pled guilty to the charges. . . .

Doc. no. 1-2, at ECF 2 (alteration and ellipsis supplied).[10]

---

[8] Doc. no. 1-1 (Complaint), ¶ 9.

[9] *Id.* ¶ 17.

[10] The court also can consider the notice of claim form without converting the motion to dismiss into a motion for summary judgment. Plaintiff acknowledges in its complaint that it

Lafayette denied the Franklin County Commission's claim on June 4, 2018, stating:

> As the cancellation of your policy with Lafayette Insurance Company took effect on 4/1/2015 and the loss was not discovered until 2018, the extended period of discovery expired upon your acquiring of a replacement policy with another insurance carrier or on 4/1/2016, whichever comes first. As such, we are unable to provide coverage for this loss.

Doc. no. 1-4 (June 4, 2018 Denial Letter).[11] *See also* doc. no. 1-1 (Complaint), ¶ 7.

### III. DISCUSSION

**A.    Breach of Contract**

The Commission's breach of contract claim turns solely upon the legal question of whether the terms of Lafayette's policy require that company to pay the Commission's claim.[12] There is no dispute that Crista Madden was an "employee"

---

submitted a notice of claim to Lafayette. Doc. no. 1-1 (Complaint), ¶ 17 ("Plaintiff properly presented the theft claim of Crista Madden to Lafayette Insurance Company for payment."). Therefore, the notice of claim is central to plaintiff's claim and undisputed. *See supra,* note 7.

[11] The court also can consider the denial letter without converting the motion to dismiss into a motion for summary judgment. Plaintiff's breach of contract claim is based upon Lafayette's denial of the claim. *See* doc. no. 1-1 (Complaint), ¶ 18 ("Defendant Lafayette Insurance Company has failed and refused to fully pay this claim."). Therefore, the letter is central to plaintiff's claim and undisputed. *See supra,* note 7.

[12] Despite arguing that discovery is necessary before deciding the breach of contract claim, the Commission acknowledges that the inquiry is purely legal. *See* doc. no. 39 (Plaintiff's Sur-Reply Brief to Defendant Lafayette Insurance Company's Additional Submissions to Their Motion to Dismiss), at 10 ("The issue between Franklin County Commission and Lafayette Insurance Company is whether or not the interpretation of the contract of Lafayette is correct or whether or not the interpretation of the contract by Franklin County Commission is correct.").

The Commission also argued in its first response brief that the court could not decide the breach of contract claim on a motion to dismiss because Lafayette had not produced a complete copy

covered under the policy, or that her actions constituted a "theft" of the Commission's "money," "securities" or "other property" as defined by the policy. The only issue is the legal question of whether the Commission discovered the loss within the period dictated by the terms of Lafayette's policy.

General contract principles govern the interpretation of insurance contracts. *See Twin City Fire Insurance Co. v. Alfa Mutual Insurance Co.*, 817 So. 2d 687, 691 (Ala. 2001) (citing *Pate v. Rollison Logging Equipment, Inc.*, 628 So.2d 337 (Ala. 1993)).

> Insurance companies are entitled to have their policy contract enforced as written. *Gregory v. Western World Ins. Co.*, 481 So.2d 878 (Ala.1985). "Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So.2d 866, 870 (Ala. 1996).

*Twin City Fire Insurance*, 817 So. 2d at 691-92. The court should assign policy terms "their common, everyday meaning and interpret[] them as a reasonable person in the insured's position would have understood them." *Pharmacists Mutual Insurance Co. v. Advanced Specialty Pharmacy LLC*, 230 So. 3d 380, 387 (Ala. 2016) (citing *State*

---

of the contract. *See id.* at 7 ("In order for Defendant Lafayette Insurance Company to prevail on a Motion to Dismiss for breach of contract, it must provide the entire contract. Defendant Lafayette Insurance Company has not done so and therefore defendant's motion to dismiss the breach of contract claim should be denied on its face."). The Commission later abandoned that argument. *See* doc. no. 54 (Plaintiff's Sur-Reply Brief to Defendant Lafayette Insurance Company's Additional Submissions to Their Motion to Dismiss), ¶ 1 ("Plaintiff no longer contends this was not a complete copy of the policy and endorsements issued to Plaintiff Franklin County Commission.").

*Farm Mutual Automobile Insurance Co. v. Brown*, 26 So. 3d 1167, 1169-70 (Ala. 2009) (in turn citing *Western World Insurance Co. v. City of Tuscumbia*, 612 So. 2d 1159 (Ala. 1992), and *St. Paul Fire & Marine Insurance Co. v. Edge Memorial Hospital*, 584 So. 2d 1316 (Ala. 1991))) (alteration supplied).

Lafayette's policy clearly states that it only covers losses discovered either during the policy period, or within one year after the policy is cancelled, unless the Commission obtains another policy from a different insurer during that one-year period (in which case the "extended period to 'discover' loss terminates immediately upon the effective date of any other insurance obtained by [the Franklin County Commission]"). Doc. no. 1-5 (Policy), at ECF 10, § E(1)(g)(1). Lafayette's policy insuring the commission for employee theft expired on April 1, 2015. The Commission discovered Madden's theft on February 7, 2018, almost three years later. That was too late to satisfy the policy's discovery requirements, so Lafayette was not obligated to pay the Commission's claim. The Commission's arguments regarding the reasons for cancelling Lafayette's policy,[13] and whether the policy covered more than $100,000 in losses,[14] are not relevant, because it is undisputed that the policy's

---

[13] *See* doc. no. 54 (Plaintiff's Sur-Reply Brief to Defendant Lafayette Insurance Company's Additional Submissions to Their Motion to Dismiss), ¶ 3 ("Plaintiff . . . respectfully requests this court to allow discovery as to who and why the policy issued to Plaintiff Franklin County Commission, which provided multi-year coverage, was cancelled.") (ellipsis supplied).

[14] *See* doc. no. 39 (Plaintiff's Sur-Reply Brief to Defendant Lafayette Insurance Company's Additional Submissions to Their Motion to Dismiss), at 5, 10.

coverage lapsed on April 1, 2015.

## B. Fraudulent Suppression

The Commission's complaint also alleges that Lafayette "fraudulently suppressed" the fact that the Commission "needed to purchase additional coverage to continue to have employee theft coverage from the previous policies purchased from Defendant Lafayette."[15] "The elements of a suppression claim are (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury." *Aliant Bank, a Division of USAmeribank v. Four Star Investments, Inc.*, 244 So. 3d 896, 930 (Ala. 2017) (citations and internal quotation marks omitted). A claim for fraud, including fraudulent suppression, must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Alabama Teachers Credit Union v. Design Build Concepts, Inc.*, 334 F. Supp. 3d 1171, 1197-98 (N.D. Ala. 2018).

The Commission's complaint falls far short of pleading its fraudulent suppression claim with particularity. The Commission does not state that Lafayette owed the Commission a duty to inform it of the need for additional coverage, or why.

---

[15] Doc. no. 1-1 (Complaint), ¶ 37.

Even if plaintiff had provided additional detail in its pleading, Alabama law makes it clear that Lafayette owed no such duty. *See Somnus Mattress Corp. v. Hilson*, – So. 3d – , No. 1170250, 2018 WL 6715777, at *8-9 (Ala. Dec. 21, 2018) (holding that, absent a special relationship, a separate agreement, additional compensation, or an affirmative misrepresentation about the contents of the policy, an insurer or agent does not have a duty to advise a client or potential client about the adequacy of coverage). The existence of the duty cannot be based, as plaintiff seems to suggest, on Lafayette's vicarious liability for any alleged fraudulent suppression by defendant Debbie Thorn,[16] because all claims against Ms. Thorn have been dismissed.[17] Moreover, even though the Commission generally alleges that Lafayette suppressed the fact that the Commission needed to purchase additional coverage, it does not state with any detail what additional coverage was available, or precisely those facts that Lafayette should have disclosed about that additional coverage. The Commission also does not explain what detrimental actions it took or refrained from taking, and it does not allege that Lafayette's inducement resulted in those actions or inactions.

In short, because plaintiff failed to state its claim for fraudulent suppression

---

[16] *See* doc. no. 39 (Plaintiff's Sur-Reply Brief to Defendant Lafayette Insurance Company's Additional Submissions to Their Motion to Dismiss), at 12 ("An insurance carrier could be vicariously liable for the misconduct of Thorn thus be subject [*sic*] to the imposition of . . . damages without evidence that it knew or should have known of the unfitness of its agent.") (ellipsis in original).

[17] *See* doc. no. 31.

with particularity, and because there are other legal bars to the viability of the claim, the fraudulent suppression claim will be dismissed.

## IV. CONCLUSION

The court concludes the Commission cannot state a viable claim against Lafayette for breach of contract or fraudulent suppression. Lafayette's motion to dismiss will be granted, and the Commission's claims against Lafayette for breach of contract claim and fraudulent suppression will be dismissed with prejudice. An appropriate order will be entered.

DONE this 30th day of August, 2019.

_____
United States District Judge