UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **FRANKLIN COUNTY COMMISSION,** | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 3:19-CV-0230-CLS |
| **CRISTA MADDEN,** *et al.,* | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This court's previous opinion addressed the claims of plaintiff, the Franklin County Commission ("the commission"), against defendant Lafayette Insurance Company. *See* doc. nos. 56 (Memorandum Opinion) and 57 (Order). The present opinion addresses the Commission's claim for breach of contract against defendant State Farm Fire and Casualty Company ("State Farm"), arising from State Farm's failure to pay a claim under a fidelity bond that covered employee theft,[1] and, State Farm's motion to dismiss that claim pursuant to Federal Rule of Civil Procedure

---

[1] *See* doc. no. 1-1 (Complaint). The complaint was filed in state court but removed here by another defendant, Lafayette Insurance Company. Doc. no. 1 (Notice of Removal). Plaintiff's complaint asserted other claims against other defendants, but only the claims against State Farm are addressed in this opinion. The Commission has acknowledged that its only claim against State Farm is for breach of contract. *See* doc. no. 36 (Plaintiff's Objection and Response to Defendant State Farm Fire and Casualty's Motion to Dismiss), at 6 ("Plaintiff has alleged claims against State Farm Fire and Casualty Company for breach of contract in the Complaint **only**.") (emphasis in original).

12(b)(6) for failure to state a claim upon which relief can be granted.[2] Upon consideration of the complaint, State Farm's motion, plaintiffs' response,[3] State Farm's reply,[4] plaintiff's sur-reply,[5] and the oral arguments of counsel, the court concludes that the motion should be granted.

## I. STANDARD OF REVIEW

The standards for evaluating a motion to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted," were fully explicated in the opinion evaluating the motion filed by Lafayette Insurance Company (*see* doc. no. 56, at 2-4) and will not be reiterated here. *See* Fed. R. Civ. P. 12(b)(6); *see also, e.g., Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

## II. ALLEGATIONS OF PLAINTIFF'S COMPLAINT AND RELEVANT POLICY LANGUAGE

State Farm issued Fidelity Bond No. 93-90-2893-3, covering the Commission

---

[2] Doc. no. 6.

[3] Doc. no. 36 (Plaintiff's Objection and Response to Defendant State Farm Fire and Casualty's Motion to Dismiss).

[4] Doc. no. 44 (Defendant State Farm Fire and Casualty Company's Reply to Plaintiff's Opposition to its Motion to Dismiss).

[5] Doc. no. 52 (Plaintiff's Sur-Reply to Defendant State Farm's Additional Submissions to Their Motion to Dismiss).

for employee theft ("the policy") on March 3, 1989.[6] The Crime Policy Declarations Page states that the policy period is from March 3, 1989 "until cancelled, as provided in the policy."[7] The policy requires each covered "employee"[8] to be listed, and the Commission added Crista Madden as a covered employee on September 17, 1992.[9] The policy states that, "[r]egardless of the number of years this Insurance applies as respects a specific 'employee,' the most we will pay in the aggregate for any one 'occurrence' is the largest Limit of Insurance applicable to that 'employee' shown in the SCHEDULE at the time loss occurred."[10] The "Schedule" states that the "Limit of Insurance" for each employee, including Crista Madden, is $100,000, and that limit never changed throughout Madden's employment.[11] An "occurrence" is defined as "all loss caused by each 'employee' [regardless of] whether the [loss is the] result of a single act or series of acts."[12] The policy also states that, "[r]egardless of the

---

[6] *See, e.g.,* doc. no. 10-1 (Complaint), ¶ 10; doc. no. 6-1 (Fidelity Bond), at ECF 2. A district court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, plaintiff's claim is founded completely upon the language of the policy, and plaintiff has not disputed the authenticity of the policy, only its interpretation.

[7] Doc. no. 6-1 (Fidelity Bond), at ECF 2.

[8] The term "employee" is defined as "any person named in the SCHEDULE." *Id.* at ECF 40, § D(3)(a)(1) (capitalization in original).

[9] *Id.* at ECF 11.

[10] *Id.* at ECF 39, § B(1) (alteration supplied, capitalization in original).

[11] *Id.* at ECF 11.

[12] *Id.* at ECF 40, § D(3)(c) (alterations supplied).

3

number of years this Insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period."[13]

Crista Madden stole approximately $753,899.21 from the Franklin County Commission General Fund, Franklin County Gas Tax Fund, and Franklin County Commission Solid Waste Fund between 2008 and 2017.[14] The Commission filed a claim under the policy for Madden's theft.[15] State Farm paid $100,000, but refused to pay any additional amount.[16] This suit followed.

## III. DISCUSSION

The sole question to be answered is a legal one: *i.e.,* whether the language of the policy can be interpreted to require State Farm to pay more than $100,000 to cover Crista Madden's theft. The Commission asserts that the policy should be construed to provide $100,000 in coverage for *each year* in which a theft occured,

---

[13] Doc. no. 6-1 (Fidelity Bond), at ECF 42, § B(12) (alteration supplied).

[14] Doc. no. 1-1 (Complaint), ¶ 9.

[15] *Id.* ¶ 12.

[16] *Id.* ¶ 13; *see also* doc. no. 6-2 (copy of check from State Farm Fire and Casualty Company to Franklin County Commission in the amount of $100,000). The court also can consider the check without converting the motion to dismiss into a motion for summary judgment. Plaintiff refers in its complaint to State Farm's *partial* payment. Doc. no. 1-1 (Complaint), ¶ 13 ("Defendant State Farm Fire and Casualty Company has failed and refused to *fully* pay this claim.") (emphasis supplied). Moreover, plaintiff acknowledges State Farm's $100,000 payment and cites to the copy of the check attached to State Farm's motion. *See* doc. no. 36 (Plaintiff's Objection and Response to Defendant State Farm Fire and Casualty's Motion to Dismiss), ¶ 4 ("On June 7, 2018, State Farm issued a check to the Commission in the amount of $100,000 . . . .") (citing to doc. no. 6-2). Therefore, the check is central to plaintiff's claim and undisputed. *See supra,* note 6.

and State Farm asserts that the policy only provides *a total of $100,000* in coverage for any single employee's theft, regardless of the length of the period over which the theft occurred.

General contract principles govern the interpretation of insurance contracts. *See Twin City Fire Insurance Co. v. Alfa Mutual Insurance Co.*, 817 So. 2d 687, 691 (Ala. 2001) (citing *Pate v. Rollison Logging Equipment, Inc*., 628 So. 2d 337 (Ala. 1993)).

> Insurance companies are entitled to have their policy contract enforced as written. *Gregory v. Western World Ins. Co.*, 481 So. 2d 878 (Ala.1985). "Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So. 2d 866, 870 (Ala. 1996).

*Twin City Fire Insurance Co.,* 817 So. 2d at 691-92. The court should assign policy terms "their common, everyday meaning and interpret[] them as a reasonable person in the insured's position would have understood them." *Pharmacists Mutual Insurance Co. v. Advanced Specialty Pharmacy, LLC*, 230 So. 3d 380, 387 (Ala. 2016) (citing *State Farm Mutual Automobile Insurance Co. v. Brown*, 26 So. 3d 1167, 1169-70 (Ala. 2009) (in turn citing *Western World Insurance Co. v. City of Tuscumbia*, 612 So. 2d 1159 (Ala. 1992), and *St. Paul Fire & Marine Insurance Co.*

*v. Edge Memorial Hospital*, 584 So. 2d 1316 (Ala. 1991))) (alteration supplied).

The common meaning of the relevant terms of State Farm's policy supports State Farm's interpretation. The policy states that the most State Farm will pay "*in the aggregate* for any one 'occurrence'" is $100,000, "[*r*]*egardless of the number of years* [*the policy*] *applies* as respects a specific 'employee.'"[17] An "occurrence" is defined as "all loss caused by each 'employee' [a term that includes Crista Madden, because she was specified in the 'Schedule,' and regardless of whether the loss was] *the result of a single act or series of acts*."[18] Moreover, the policy specifically states that its $100,000 benefit limit does not cumulate from year to year: *i.e.,* "Regardless of the number of years this Insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period." Doc. no. 6-1 (Fidelity Bond), at ECF 42, § B(12). There is no reasonable way to read those provisions to require State Farm to pay more than $100,000 for Crista Madden's theft, and the Commission has not identified any other policy provisions that support a contrary interpretation.

The Commission asserts that "the Fidelity Bonds are individual coverages per

---

[17] Doc. no. 6-1 (Fidelity Bond), at ECF 39, § B(1) (alterations and emphasis supplied).
[18] *Id.* at ECF 40, § D(3)(c) (alteration and emphasis supplied).

year, which allows coverage up to $100,000.00 for theft **each year**. . . ."[19] But other policy provisions refute that interpretation by stating that the policy period began upon its inception on March 3, 1989, and ran "until cancelled."[20] There is no indication that the policy ever was cancelled, so there was only one policy period, and only one term of coverage for $100,000 for each employee listed. *See Royal Insurance Company of America v. Thomas*, 879 So. 2d 1144, 1155 (Ala. 2003) (holding that courts "must interpret insurance policies 'to give meaning and effect, if possible, to every word and phrase in the contract' and cannot adopt 'a construction which neutralizes any provision'") (quoting J. Appleman, *Insurance Law and Practice* § 7383 (1981)).

The Commission also asserts that the ambiguity of the policy's terms prevents dismissal as a matter of law, but there is no ambiguity because the relevant policy provisions are subject to only one *reasonable* construction. *See Twin City Fire Insurance Co.,* 817 So. 2d at 92 (citing *Tate v. Allstate Insurance Co.*, 692 So. 2d 822 (Ala. 1997)) ("The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous."); *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 308-09 (Ala. 1999) ("The terms of an insurance policy are

---

[19] Doc. no. 36 (Plaintiff's Objection and Response to Defendant State Farm Fire and Casualty's Motion to Dismiss), at 2 n.1 (emphasis in original). *See also id.* at ¶ 2 ("Each year of coverage required a renewal of the State Farm Policy from one year to the next.").

[20] Doc. no. 6-1 (Fidelity Bond), at ECF 2.

ambiguous only if the policy's provisions are *reasonably* susceptible to two or more constructions or there is *reasonable* doubt or confusion as to their meaning.") (emphasis supplied).

Plaintiff also asserts that the motion to dismiss should be denied, and discovery should be allowed, because State Farm failed to produce a complete copy of the policy to plaintiff or the court. The copy of the policy attached to State Farm's motion to dismiss begins with a certification page, where John R. Horton, the Underwriting Team Manager states:

> I, the undersigned do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Fire and Casualty Company.
>
> I received the request for a true and accurate record of the terms and conditions of Policy Number 93 90 2893 3 including any endorsements, if applicable, for the policy term(s) 3/3/1989 to 3/3/2020 and insuring FRANKLIN COUNTY COMMISSION of PO BOX 1028, Russellville AL 35653-1028 based on available records.
>
> However, I am unable to provide a complete record as the information is not available.
>
> *The following documents are not available:*
>
> *FB 9148*
> *FB 9148.1.*

Doc. no. 6-1, at ECF 1 (Certified Policy Record) (emphasis supplied, capitalization in original). Even so, State Farm represents in its reply brief that endorsement "FB-

8

9148 was removed from the policy and replaced with FB-9148.1 on October 15, 1990."[21] State Farm also attached a certified copy of endorsement FB-9148.1 to its reply brief.[22] That endorsement does not contain any provisions that would affect the outcome of State Farm's motion to dismiss.[23] Accordingly, there is no reason to delay ruling on the motion for the purpose of conducting discovery.

## IV. CONCLUSION

In summary, the court concludes that State Farm did not breach its insurance contract with the Commission, because it paid all amounts owing to the Commission under the unambiguous terms of its policy. State Farm's motion to dismiss will be granted, and the Commission's breach of contract claim against State Farm will be dismissed with prejudice. An appropriate order will be entered contemporaneously herewith.

DONE this 30th day of August, 2019.

_____
United States District Judge

---

[21] Doc. no. 44 (Defendant State Farm Fire and Casualty Company's Reply to Plaintiff's Opposition to its Motion to Dismiss), at 7.

[22] See doc. no. 44-1.

[23] There is no merit to any of plaintiff's arguments that endorsement FB-9148.1 creates a fact dispute warranting discovery. See doc. no. 52 (Plaintiff's Sur-Reply to Defendant State Farm's Additional Submissions to Their Motion to Dismiss).